The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v.* MARSHALL FIELD & Co. (No. 3495)[1]

[1] T. D. 45701.

United States Court of Customs and Patent Appeals, May 2, 1932

*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.
*James W. Bevans* for appellee.

[Oral argument February 10, 1932, by Mr. Lawrence and Mr. Bevans]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise here at issue is represented by a sample. It consists of a blown-glass article, silvered, having the shape of a small bowl. It is about 1⅞ inches in height and 2½ inches in circumference at its top, and slopes gradually on the outside from its top to its bottom. In its inner construction there is a circumferential bowl-like depression about seven-eighths inch in depth at its center. As imported it appears to have contained a powder puff.

The report of the collector of customs to the United States Customs Court describes the merchandise as "powder bowls, composed of glass, decorated." He classified it under paragraph 218 (e) of the Tariff Act of 1930 and assessed duty at 75 per centum ad valorem.

The importer protested, claiming same to be dutiable—

\* \* \* under the provisions of paragraph 218 of the Tariff Act of 1930, either directly or by similitude by virtue of paragraph 1559, at the rate of 60 per centum ad valorem as not jars designed as containers of talcum powder.

The protest was sustained by the Customs Court and the merchandise held dutiable at 60 per centum under paragraph 218 (f) of said act.

The Government thereupon appealed the issue to this court.

In arriving at its conclusion the Customs Court, among other things, said—

A mere reading of paragraph 218 (e) under which this merchandise was assessed indicates to us that the merchandise covered thereby is bottles, vials, and jars. Exhibit 1 is neither a bottle, a vial, nor a jar. It is clearly a species of bowl. Not being a bottle, a vial, or a jar, it is not dutiable under paragraph 218 (e) as assessed by the collector. An inspection of the sample shows it is an article composed of silvered glass, or at least decorated or colored glass, and it is not specially provided for in the tariff act. The collector's classification indicates it is in chief value of glass, rather than of the powder puff. We therefore hold that the collector erred in his classification of this merchandise, and that it is properly dutiable, as claimed by the plaintiffs, at 60 per cent ad valorem under paragraph 218 (f).

In the hearing before us appellee presented oral argument but filed no brief.

Only one witness testified in the case, and his testimony is meager and unsatisfactory, giving little aid in determining what the receptacles are used for, and nothing was proven indicating their trade designation. He was asked few questions and, so far as we can see, might as well not have been called.

It seems a fair presumption that the articles are used in connection with talcum powder or some similar toilet preparation, but whether actually to hold powder or simply to hold the puffs, with which the powder is applied, may be questionable. We are inclined to the opinion that the latter is the regular use and that the articles are not in fact "used or designed to be used as containers of * * * talcum powder * * *."

It is obvious from the shallowness of the depression alluded to that no appreciable quantity of powder could be held by the receptacle.

There is, of course, a presumption of correctness attaching to the collector's classification, but, as has been noted, his description of the articles states them to be "powder *bowls*." (Italics ours.)

The language of paragraph 218 (e) here pertinent is—

(e) Bottles and *jars*, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder * * *. (Italics ours.)

We think it obvious that, while use may be inquired into for the purpose of determining whether an article is classifiable under said paragraph, the said inquiry is limited to bottles and jars, and if it be found that an article is not in fact a bottle or jar, then use does not render it such.

The bowls here involved, we think, can not be said to have any of the characteristics of a jar, as that term is commonly understood. On the other hand, in shape and appearance, the sample is, as stated by the court below, a species of bowl.

Upon the record before us, therefore, we feel constrained to hold that there was no error in the judgment of the Customs Court, and same is *affirmed*.

### DISSENTING OPINION

Graham, Presiding Judge: I am unable to agree with the majority opinion in this case. To my mind, the imported articles are clearly within the scope of said paragraph 218 (e).

The language involved here is—

Bottles and jars, wholly or in chief value of glass, of the character used or designed to be used as containers of perfume, talcum powder, toilet water, or other toilet preparations.

The lower court has held that the imported articles are not "bottles" or "jars," but are bowls and hence do not come within the subparagraph. In this view the majority opinion coincides. By this

conclusion articles which were plainly intended to be included within this language by the Congress are relegated to a provision, paragraph 218 (f), which was primarily intended to cover table and kitchen glassware.

The imported articles are small, silvered, blown-glass vessels, shaped something like a small, shallow teacup, having no handle. The sample is about 2½ inches across the top, sits on a flat base about 1¾ inches across, and is about 1⅜ inches deep. The interior is a concave false bottom and is about seven-eighths inch deep at the deepest part. All we have to rely upon to determine the proper classification of the article is the sample and the return of the collector. The collector referred to the article as "powder bowls composed of glass, decorated," and classified them under said paragraph 218 (e). Such classification raised the presumption that he found them to be "bottles or jars, * * * of the character used or designed to be used as containers of perfume." This presumption has not been rebutted.

That the imported articles are containers for talcum powder is admitted by the importer's protest, wherein they are referred to as "glass powder bowls." It is shown by the record, also, that each article contained a powder puff when imported.

There is fully as much warrant for holding these articles to be jars as there is to hold them to be bowls, even were we to rely solely upon the common meaning of the words. The word "jar" is variously defined:

Webster's New International Dictionary, 1932:

A deep, broad-mouthed vessel of earthenware or glass.

New Standard Dictionary, 1931:

A deep vessel of earthenware or glass, more or less cylindrical in shape, with no spout, and generally with a wide mouth.

New English Dictionary:

A vessel of earthenware, stoneware, or glass, without spout or handle (or having two handles), usually more or less cylindrical in form. Orig. used only in its eastern sense of a large earthen vessel for holding water, oil, wine, etc.

Century Dictionary:

An earthen or glass vessel of simple form, without handle or spout.

American Universities Unabridged Dictionary:

A vessel with a large body and broad mouth, made of earthenware or glass.

The Walpole Society, the Ceramic Collectors' Glossary:

A deep vessel, of cylindrical or ovoid form, with a wide mouth, and flat base, as a pickle jar, hawthorn jar, etc., the latter having a dome-shaped or cap cover.

Worcester Dictionary, 1881:

An earthen or glass vessel with large belly and broad mouth, as a laden jar.

Knight's American Mechanical Dictionary:

A vessel of glass or earthenware for fruit, preserves, pickles and various domestic uses.

The author last above quoted calls attention to the analogue of our modern fruit jar being found among the ancient Egyptians. He also calls attention to various types of jars, many of which have lids or stoppers, some having flat bottoms and some pointed bottoms.

On the other hand, the word "bowl" is thus defined by Webster:

1. A concave vessel of various forms, usually hemispherical or approximately so, to hold liquids, etc.

2. Specif., a drinking vessel for wine or other spirituous liquors; * * *

The Walpole Society, the Ceramic Collectors' Glossary, defines the word as follows:

A receptacle deeper than a saucer, whose diameter usually exceeds its height, with or without a basal rim, or chime; used to hold liquids or solids.

From these various definitions, it thus appears that these articles as nearly respond to the definitions of the word "jar" as to that of the word "bowl." Either may be of various shapes and sizes.

In this view of the matter we should endeavor to ascertain what the Congress had in mind in enacting this and the former subparagraphs of paragraph 218. This paragraph was a recodification of the various glass paragraphs of the preceding act. Under the Tariff Act of 1922, this court, constrained by the statutory language, had held that glass containers for talcum powder and similar articles were classifiable at a lower rate under paragraph 217 of said act, and not under paragraph 218 thereof. *United States* v. *Hudnut*, 15 Ct. Cust. Appls. 463, T. D. 42546.

When the bill which afterward became the Tariff Act of 1930 was under consideration, it was sought to cure this condition. The matter was discussed at length in the hearings before the Ways and Means Committee of the House, and attention was called to the *Hudnut* case, *supra*, and its effects upon the makers of the better grade of talcum and perfume containers. Hearings, Ways and Means Committee, 70th Congress, 2nd Session, Volume 2, pages 1368–1393.

To give the desired protection to the industry involved, there was inserted in subparagraph (e) the language—

Bottles and jars, * * * *of the character used or designed to be used as containers of perfume, talcum powder*, [etc.]. (Italics ours.)

The necessity of such a provision had been called to the attention of the Congress by the Summary of Tariff Information, 1929, furnished by the United States Tariff Commission, Volume 1, pages 517, 518; Supplement pages, 139, 141.

In the report of the Ways and Means Committee on the bill, H. R. 2667, attention was called to the effect of decisions of the United

States Customs Court as to glass containers of perfume and talcum powder, with this final observation —

\* \* \* Under these decisions, more or less expensive bottles, vials, and jars, decorated or not decorated, of the character used as containers of perfume, talcum powder, or other toilet preparations, have been held to be dutiable under paragraph 217. In the present bill, these types of containers are excluded from paragraph 217 by reason of the insertion in paragraph 218 of a specific provision covering such articles. (Report No. 7, 71st Cong., 1st Sess., p. 34.)

The Finance Committee of the Senate also referred to the same provision in its report, Report No. 37, 71st Congress, 1st Session, page 9 —

Machine production of glass bottles has for the most part displaced the older hand-blown method of production, and those produced by the latter method consist of types which have not as yet been successfully made by machines. An increased rate has been imposed upon bottles used as containers of perfume and toilet preparations in order to perpetuate an industry which is practically the only source of employment for the comparatively few highly skilled glass-bottle blowers remaining in the trade.

Manifestly, the Congress enacted this provision for the purpose of embracing articles like those imported here. This desired result is entirely eliminated by permitting the importer to fashion his talcum or perfume containers in some unusual form so that, for instance, they might more nearly resemble a bowl, as sometimes defined, than a jar, as sometimes defined. This is a refinement of reasoning that ought not to be indulged in. The articles, in my opinion, were properly classified by the collector, and the judgment of the lower court should be *reversed.*

BLAND, J., *concurs* in this *dissent.*